IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| MARY A. ANDREATTA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 6:14-cv-03512-NKL |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Plaintiff Mary A. Andreatta appeals the Commissioner of Social Security's final decision denying her application for disability insurance benefits under Title II of the Social Security Act. The decision is affirmed.

**I.   Background**

Andreatta was born in 1960. She filed her application for disability insurance benefits in March 2008, alleging she became disabled beginning February 7, 2008, due to diabetes mellitus with neuropathy. The Administrative Law Judge held a hearing on November 6, 2009 and denied Andreatta's application on March 10, 2010. The Appeals Council denied her request for review in March 2011, but in May 2012, this Court reversed and remanded for consideration of post-hearing evidence submitted by Andreatta.

The ALJ held a second hearing on the application in August 2013, and issued a decision in September 2013, again denying Andreatta's application. The Appeals Council denied

Andreatta's request for review in October 2014.[1] Thus, the relevant alleged disability period for purpose of the present appeal is February 7, 2008 through the date of the ALJ's first decision, March 5, 2010.

In this appeal, Andreatta focuses on certain of the severe impairments reflected in the September 2013 decision—neuropathy, degenerative joint disease of the right shoulder, and carpal tunnel syndrome—and how they affect the RFC determination.

**A. Medical history**

    **1. Dennis E. Robinson, D.O.**

Dr. Robinson, Andreatta's primary care doctor, assessed bilateral carpal tunnel syndrome in March 2005, after a nerve conduction study was positive for moderate neuropathy on the right and left. He recommended conservative treatment.

In February 2006, Dr. Robinson noted tenderness in Andreatta's lumbar spine, reduced flexion and extension, and muscle spasm, but negative straight leg test. Andreatta had normal range of motion and no tenderness or swelling in her upper and lower extremities. Medication was prescribed. In June 2006, Dr. Robinson examined Andreatta's back and extremities and observed no abnormalities. In July 2006, examination indicated increased sensitivity in Andreatta's lower legs consistent with neuropathy, but she refused an appointment with a neurologist. In September 2006, Andreatta's upper and lower extremities exhibited no abnormalities.

---

[1] On March 25, 2010, Andreatta filed an additional application for disability insurance benefits, and an application for supplemental security income. They were denied by an ALJ in January 2012, and the Appeals Council denied review in June 2012. Andreatta did not appeal. Andreatta's present appeal involves periods that could extend into the adjudicated periods at issue in her March 25, 2010 applications. But in the decision from which Andreatta is presently appealing, the ALJ expressly considered whether to reopen the decision on her March 25, 2010 applications and decided not to, and Andreatta does not argue that it should have been reopened.

In November 2007, Dr. Robinson diagnosed a sprain or strain of the right shoulder, and gave Andreatta an injection. In December 2007, Andreatta complained she could "hardly work" due to right arm pain. Dr. Robinson diagnosed neuropathy, and noted a reduced range of motion in the right shoulder, which he injected with lidocaine.

In January 2008, Dr. Robinson noted normal range of motion, with no joint tenderness or swelling in the lower or upper extremities. Dr. Robinson stated in a letter dated January 30, 2008, that Andreatta had diabetes mellitus and diabetic neuropathy with frequent episodes of pain. In February 2008, Andreatta saw Dr. Robinson for complaints of pain in her right arm and legs. Examination indicated Andreatta's right arm was tender, with decreased range of motion, but revealed no evidence of lower extremity abnormalities. The doctor assessed diabetic neuropathy and prescribed medications. In March 2008, Andreatta complained of "lower back pain and spasm, lots of neuropathic pain in the legs and feet.[]" [Tr. 219.] Dr. Robinson did not record objective findings. His assessment was diabetic neuropathy, lower back pain, and uncontrolled diabetes, and medication was prescribed.

Andreatta saw Dr. Robinson in June 2008, following up on her recent hospitalization for diabetic ketoacidosis. The doctor noted Andreatta was "doing better." [Tr. 309.] In July 2008, Dr. Robinson found no abnormalities of the upper or lower extremities on examination. In August 2008, Dr. Robinson noted Andreatta's right shoulder had reduced range of motion, but was not tender. Her right forearm was tender. Medications were prescribed. Andreatta reported neuropathic pain to Dr. Robinson in September 2008, but the doctor noted no abnormalities on examination. In October 2008, Dr. Robinson noted Andreatta had neuropathic pain in her legs and feet, right shoulder tenderness with crepitus, and hand pain. Medications were prescribed and Andreatta was given an injection.

A nerve conduction study on October 22, 2008, indicated carpal tunnel syndrome. Dr. Robinson noted on October 27, 2008, that Andreatta's hands were tender. In November 2008, Dr. Robinson assessed uncomplicated diabetes, neuropathy, and carpal tunnel syndrome. Objective examination findings were normal. Andreatta saw Dr. Robinson for sinus problems and congestion in December 2008, and he noted normal range of motion and no tenderness or swelling of her upper or lower extremities.

In January 2009, Dr. Robinson diagnosed shoulder problems. Examination showed full range of motion with slight tenderness to deep palpation in the anterior shoulder and discomfort with resistance. Medications were prescribed. In March 2009, Dr. Robinson assessed diabetic neuropathy and uncomplicated diabetes. Examination indicated decreased sensation in both feet, and some fungus on the nails, but was otherwise normal. Medications were prescribed. In April 2009, Dr. Robinson assessed abdominal pain and neuropathy, but noted no objective findings. In May 2009, Dr. Robinson assessed neuropathy, fibromyositis, and low back pain. Physical examination was normal. Medications were prescribed. In June 2009, Dr. Robinson's assessment was unchanged, and he noted no objective medical findings.

In October 2009, Andreatta saw Dr. Robinson for emergency room follow up, complaining of back and extremity pain. Andreatta exhibited restricted range of motion, pain, muscle spasms, and point tenderness in her lumbar spine, and pain, tenderness, and muscle spasms in the thoracic region. A straight leg test was negative. Dr. Robinson noted neuropathy in both hands, with decreased sensation and strength bilaterally. He assessed diabetic neuropathy, low back pain, and irritable bowel syndrome. At a December 2009 visit, Dr. Robinson assessed fibromyositis and irritable bowel syndrome, noting no abnormalities, normal range of motion, no joint tenderness, and no swelling of the upper or lower extremities.

Andreatta saw Dr. Robinson in January 2010 for medication refills and with complaints of congestion and left hip pain. The doctor assessed Eustachian tube dysfunction and uncomplicated diabetes, and noted no abnormalities on exam. In March 2010, Andreatta complained of a sore throat, sinus congestion, and left knee pain. Dr. Robinson assessed acute pharyngitis, knee effusion, and palpitations. Andreatta's left knee was tender, with reduced range of motion, but her upper extremities and neck were normal.

### 2. Specialists

Andreatta was seen at St. John's Clinic on November 25, 2008, for problems with her hands going numb. On December 31, 2008, Victoria D. Kubik, M.D. performed bilateral carpel tunnel release surgery. Andreatta saw Dr. Kubik for follow up on January 13, 2009, stating that the numbness and tingling had significantly improved, though she still had unexpected soreness in the wrist and hands. Dr. Kubik noted that the soreness was expected after a bilateral carpal tunnel release.

Andreatta went to St. John's Clinic on January 25, 2009, for an evaluation of her right shoulder. An x-ray showed significant degenerative changes of her acromioclavicular joint with spurring. On January 30, 2009, Victor Wilson, M.D., performed right shoulder arthroscopic surgery, with debridement of the superior labrum, subacromial decompression, and distal clavicle excision. On March 2, 2009, Dr. Wilson opined that Andreatta was doing well and had full passive and active range of motion. [Tr. 322.]

Dr. Robinson referred Andreatta to Jennifer Zhai, M.D., a neurologist, for consultation concerning Andreatta's neuropathy. Andreatta saw Dr. Zhai on May 14, 2009, and explained Neurontin helped initially, but lost its efficacy; Cymbalta caused a significant cognitive side effect; and Lyrica helped her pain, but she could not tolerate a higher dosage. Examination

5

revealed reflexes at 2/5 at bilateral biceps, triceps, brachioradialis, and absent at the knees and ankles. Examination also showed a decrease in pinprick and light touch in the lower extremities in stocking distribution. Dr. Zhai diagnosed diabetic neuropathy and chronic pain syndrome.

Andreatta saw Dr. Zhai again on September 23, 2009, complaining of a year-long tremor in the right arm and two-month tremor in the left arm. Andreatta said the tremors increased with activity, were intermittent, and sometimes affected her ability to do fine motor activities. She also said she continued to have chronic pain. Examination revealed a tremor in both arms and hands, more on the right side on extension. Dr. Zhai diagnosed tremor, diabetic neuropathy, and chronic pain syndrome that was probably multifactorial. The doctor believed the tremor was due to Andreatta's inhaler.

On August 2, 2010, Andreatta returned to Dr. Wilson with complaints about her right shoulder. Although Andreatta "did great" with her arthroscopy a year and a half earlier, over the previous few weeks she had gradually increasing pain. [Tr. 425.] She said the pain worsened with overhead activities and improved with rest. Dr. Wilson diagnosed status post right shoulder arthroscopy with a recent flare-up and signs of rotator cuff tendinitis, and fibromyalgia, and gave Andreatta an injection.

Andreatta saw Dr. Evenson on August 23, 2010, with complaints of back pain lasting three years. Examination revealed tenderness throughout the lumbar spine. Dr. Evenson noted that an MRI showed small spondylolisthesis darkening in the L5-S1 disc. He also noted Andreatta had a slow gait, she rose from a seated position very stiffly, she had limited range of motion of her lumbar spine secondary to discomfort, there was pain to palpation in the midline in the lower lumbar region, and pain to palpation in the facet and sacroiliac joints. He diagnosed chronic pain, chronic lower back pain probably secondary to spondylolisthesis, fibromyalgia, and

tobacco abuse. On September 8, 2010, Andreatta received a lumbar nerve block. On September 22, 2010, she received a lumbar radiofrequency ablation, for lumbar spondylosis without myelopathy.

On September 27, 2010, Andreatta reported to Dr. Zhai that the injections and ablation did not help the pain, she had more numbness in her feet, she was off Lyrica due to ankle swelling, she could not tolerate Cymbalta, and she had side effects from Neurontin, but that primidone was helping her tremor. Examination showed abnormalities including bilateral symmetric reflexes of 2/5 and decreased sensation at the lower extremities in stocking distribution to below the knees. Dr. Zhai diagnosed sensory neuropathy due to diabetic mellitus, and noted there was no medication that could give more benefit for the numbness.

On October 4, 2010, Andreatta saw Dr. Wilson for right shoulder follow-up. She said she was doing very well with her right shoulder, but was having problems with her left shoulder such as difficulty with overhead activities. Examination of the right shoulder was essentially normal. The left shoulder showed symmetric range of motion in all planes, and positive Nee and Hawkins impingement signs. Dr. Wilson diagnosed improved right shoulder pain, and left shoulder pain with clinical signs of impingement. He gave Andreatta an injection in the left shoulder.

### B. Opinion evidence

In October 2009, Andreatta's attorney submitted an undated medical source statement signed by Dr. Robinson. [Tr. 332–35.] Using a three-page form, Dr. Robinson opined Andreatta could occasionally lift and carry 10 pounds, frequently lift and carry five pounds; stand or walk 30 minutes continuously for a total of three hours in an eight-hour workday; and sit 30 minutes continuously for a total of four hours in an eight-hour workday. He indicated that Andreatta's

ability to push and pull was limited due to "neuropathy in both hands and feet." [Tr. 333.] He opined Andreatta could never climb, balance, stoop, kneel, crouch, or crawl, and could occasionally reach, handle, finger, and feel due to neuropathy with loss of sensation in her hands. He opined that Andreatta could have no exposure to vibration; she would require up to 20–minute rest periods every 30 to 60 minutes throughout an eight-hour workday; her impairments would likely disrupt her work schedule 20 times per month for one to two hours. Dr. Robinson noted he did not consider Andreatta's pain or other subjective complaints in giving his opinions.

On December 12, 2009, Andreatta saw Anthony P. Zeimet, D.O., for a consultative examination. Dr. Zeimet observed that Andreatta was in no apparent distress, and was able to get on and off the examination table, and up and out of the chair, without much difficulty. He noted that Andreatta preferred to stand during the examination. Andreatta had full strength and range of motion in her upper and lower extremities, but diminished sensation in her bilateral lower extremities. Dr. Zeimet noted full range of motion in Andreatta's spine, and that she was able to walk on her heels and toes, and squat. A straight leg test was normal.

Dr. Zeimet opined that Andreatta could work an eight-hour day, but preferred standing and walking due to back pain and should be allowed to change positions occasionally. He opined that Andreatta could probably lift and carry 20 pounds occasionally and lift 10 pounds frequently, and had no limitations in range of motion, including squatting. Her ability to grip and grasp was also intact. Dr. Zeimet opined that Andreatta could sit for 45 minutes continuously and five hours total, and stand and walk for one hour continuously and four hours total, in an eight-hour day. She had no limitations in reaching, handling, fingering, feeling, pushing, or pulling, and could occasionally operate foot controls. [Tr. 344.] Dr. Zeimet opined that Andreatta could never climb ladders or scaffolds; occasionally balance, stoop, kneel, crouch,

or crawl; and frequently climb stairs and ramps. She should have no exposure to unprotected heights, operate a motor vehicle no more than occasionally, and could tolerate frequent exposure to moving mechanical parts, humidity, wetness, extreme cold and heat, vibrations, and loud noise.

In August 2011, Dr. Robinson completed a Medical Source Statement Physical form. [Tr. 1001-1003.] He opined Andreatta was limited as follows:

- Lift and/or carry 10 pounds frequently and 20 pounds occasionally;
- Stand and/or walk for 30 minutes continuously and for two to three hours total in an eight-hour workday;
- Sit for 45 minutes continuously and for four hours in an eight-hour workday;
- Limited push and/or pull due to numbness in her feet and hands;
- Never climb, balance, stoop, kneel, crouch, or crawl;
- Occasionally reach, handle, finger and feel due to pain in both hands and feet with activity and she may have had to move about frequently;
- Limited in the ability to be exposure to vibration because that made her hands worse;
- Would need to rest every "hour or so" for 10 to 15 minutes each time; and
- Would have daily disturbances in the regular work schedule lasting one to two hours.

*Id.*

Two years later, in August 2013, Dr. Robinson completed another Medical Source Statement Physical form. [Tr. 1580-83.] He opined Andreatta was limited as follows:

- Lift and/or carry 10 pounds occasionally and frequently;
- Stand and/or walk for 30 minutes at one time and for three hours total;
- Sit for 45 minutes at one time and for four hours total;
- Limited push and/or pull due to numbness in the feet and hands;
- Never climb, balance, stoop, kneel, crouch, or crawl;
- Occasionally reach, handle, finger, and feel because she dropped things and had poor feeling and weakness;

9

- Would need rest periods every hour for 20 to 30 minutes; and
- Would have daily disruptions in a regular work schedule for two hours.

[*Id.*] Dr. Robinson did not indicate, on either the 2011 or 2013 Medical Source Statement Physical form he filled out, whether his opinions were based on Andreatta's then-existing conditions, or applied to the February 7, 2008 through March 5, 2010 period.

Steven Goldstein, M.D., testified as a consulting expert at the August 22, 2013 hearing. He reviewed the records from the period at issue, and opined that they did not show any limitation on Andreatta's use of her hands, fingers, or arms. [Tr. 807-11.]

### C. Andreatta's work history and testimony

Andreatta graduated from high school and has an associate degree in accounting. She worked from 1998 to early 2008 for Bass Pro as a credit card clerk and order clerk. In her spare time, she was self-employed, painting apartments at a senior citizen complex. [Tr. 41, Hearing of November 6, 1009.] While working for Bass Pro, Andreatta developed problems with swelling and pain in her hands and feet, and back pain. Her doctor changed her medications, which reduced her hand swelling. But her foot swelling and pain did not improve, causing her to quit her job. [Tr. 820-21, Hearing of August 22, 2013.] She has not had substantial gainful employment since February 2008.

Prior to March 5, 2010, Andreatta would drive 30 miles per week, and might go to the grocery store or doctor appointments. She avoided frequent trips to the grocery store because she had had episodes in which her "legs would give out[.]" [Tr. 825, Hearing of August 22, 2013.] She testified that she does her laundry once a week and can microwave a meal. She can brush her teeth, pull a zipper, dress and undress herself, and put on socks and shoes, but cannot fasten buttons or tie shoelaces. She cannot do yard work.

10

### D. The ALJ's decision

The ALJ found that during the relevant period, Andreatta had severe impairments of diabetes mellitus with neuropathy, chronic obstructive pulmonary disease or emphysema, hypertension, degenerative disc disease with spondylosis, degenerative joint disease of the right shoulder and knee, carpal tunnel syndrome, and obesity. Andreatta did not claim to meet any Listings, and the ALJ did not find that she met any.

The ALJ found Andreatta has the residual functional capacity to perform:

> [L]ight work as defined in 20 CFR 404.1567(b) except that [she] is limited to lifting/carrying up to 10 pounds frequently and 20 pounds occasionally; sitting up to 45 minutes at a time and up to 5 hours in an 8-hour day; standing and/or walking up to 1 hour at a time and for 4 hours in an 8-hour day; operating foot controls occasionally; can never climb ladders or scaffolds; can frequently climb stairs and ramps; can occasionally balance, stoop, kneel, crouch, and crawl; cannot tolerate unprotected heights; and should avoid extreme temperature, humidity, dust, fumes, poor ventilation or vibration.

[Tr. 672.] The ALJ found Andreatta's allegations of totally disabling, medically determinable impairments not credible. The ALJ gave "greatest weight" to the opinion of examining consultant, Dr. Zeimet, than to the opinion of the treating source, Dr. Robinson, because of the relative support for Dr. Zeimet's opinion in the overall record. [*Id.* at 676.] Dr. Robinson's form opinions did not provide a rationale for his assessments; did not reflect positive clinical findings on examination or test results; nor were they supported by the records. [*Id.*] The ALJ also gave significant weight to the opinion of the qualified medical expert, Dr. Goldstein, because the doctor "gave particular attention to actual findings on examination and test results shown in the record." [*Id.*]

The ALJ determined Andreatta was capable of performing past relevant work as a credit card clerk and order clerk, jobs that do not require the performance of work-related activities

11

precluded by her RFC. Notwithstanding that determination, the ALJ noted Andreatta could also perform other jobs existing in the national economy, consistent with her RFC, such as mail clerk and marker.

## II. Discussion

Andreatta argues that the ALJ did not consider limitations related to certain of the severe impairments the ALJ identified: neuropathy, degenerative joint disease of the right shoulder, and carpal tunnel syndrome. Specifically, Andreatta argues that these severe impairments involve manipulative and reaching limitations, and that the ALJ failed to factor the limitations into the RFC. Therefore, she argues, the RFC is not based on substantial evidence.

The Commissioner's findings are reversed "only if they are not supported by substantial evidence or result from an error of law." *Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012). Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support the Commissioner's conclusions. *See Juszczyk v. Astrue,* 542 F.3d 626, 631 (8th Cir. 2008). "If substantial evidence supports the Commissioner's conclusions, [the Court] does not reverse even if it would reach a different conclusion, or merely because substantial evidence also supports the contrary outcome." *Byers*, 687 at 915.

Residual functional capacity is what a claimant can still do despite his or her physical or mental limitations. 20 C.F.R. § 404.1545(a); *Masters v. Barnhart,* 363 F.3d 731, 737 (8th Cir. 2004). Assessment of the RFC is based upon all relevant, credible evidence. 20 C.F.R. § 404.1545(a); *Stormo v. Barnhart*, 377 F.3d 801, 807 (8th Cir. 2004). The RFC determination must be supported by substantial evidence, including at least some medical evidence. *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000).

A claimant has the burden to prove the RFC at step four of the sequential evaluation.

*Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). Although an ALJ must consider the combined effect of both severe and non-severe medically determinable impairments in formulating the claimant's RFC, *Ford v. Astrue,* 518 F.3d 979, 981 (8th Cir.2008), the burden of demonstrating the functional limitations of these impairments ultimately lies with the claimant, *Vossen v. Astrue,* 612 F.3d 1011, 1016 (8th Cir.2010). Thus, an ALJ's failure to include certain limitations does not require reversal if there is no evidence that the "conditions impose any restrictions on [the claimant's] functional capabilities." *Owen v. Astrue,* 551 F.3d 792, 801 (8th Cir. 2008). *See also Stormo*, 377 F.3d at 807 (8th Cir. 2004) ("That a claimant has medically-documented impairments does not perforce result in a finding of disability.") (*citing Brown v. Chater,* 87 F.3d 963, 964 (8th Cir. 1996)).

The ALJ noted that much of the record for the period at issue was detailed in the original ALJ decision and this Court's decision, so the ALJ treated the discussion of the records contained in those decisions as incorporated into the new ALJ decision. [Doc. 673.] The ALJ did explicitly address certain portions of the record, including evidence relating to Andreatta's carpal tunnel syndrome, right shoulder problems, and neuropathy, and her ability to reach, handle, finger, or feel:

> The claimant was diagnosed with carpal tunnel syndrome in 2005 with conservative treatment. A nerve conduction study on October 22, 2008, indicated carpal tunnel syndrome and in December 2008 the claimant had bilateral carpal tunnel release surgery. The record from January 13, 2009, notes that the claimant had significantly improved. (Exhibit 10F)
>
> ***
>
> A shoulder strain was diagnosed in November 2007. The claimant had arthroscopic surgery with debridement of superior labrum, subacromial decompression, and distal clavicle excision on January 30, 2009. The record for March 2, 2009, states that the claimant was doing well. (Exhibit 11F) The claimant was seen on

August 2, 2010, after the period at issue for this decision, with right shoulder pain. This record states that the doctor had done arthroscopy and that the claimant "did great with that," but over the last few weeks had gradually increasing pain. She was diagnosed with rotator cuff tendonitis/biceps tendonitis and was treated with a lumbar nerve block. (Exhibit 20F)

\*\*\*

On October 12, 2009, the claimant's representative submitted a Physical Medical Source Statement form signed by Dennis Robinson, D.O. Although undated, this form is presumed to have been completed shortly before it was submitted. This form showed the opinion that the claimant can lift and/or carry 5 pounds frequently and 20 pounds occasionally; stand and/or walk 30 minutes at a time and 3 hours in an 8-hour day; sit for 30 minutes at a time and 4 hours in an 8-hour day; that she cannot climb, balance, stoop, kneel, crouch, or crawl; can occasionally reach, handle, finger, or feel; must avoid vibration; would need to rest every 30 to 60 minutes for 15 to 20 minutes; and would have 20 times a month when her impairments would be likely to disrupt a regular work schedule for one to two hours. (Exhibit 12F)

The claimant was seen on December 12, 2009, by Anthony Zeimet, D.O. for a consultative examination. Dr. Zeimet reviewed records provided and did a physical examination. He noted no muscle atrophy and generally full range of motion. Some diminished sensation was noted on the lower extremities. The claimant was able to walk, squat, and walk on her heels and toes. Dr. Zeimet showed a diagnosis including diabetes, diabetic neuropathy, lumbago, hypertension, and tobacco abuse. He competed a Physical Medical Source Statement showing the opinion that the claimant retains the residual functional capacity to lift/carry up to 10 pounds frequently and 20 pounds occasionally; sit up to 45 minutes at a time and up to 5 hours in an 8-hour day; stand and/or walk up to 1 hour at a time and for 4 hours in an 8-hour day; operate foot controls occasionally; can never climb ladders or scaffolds; can frequently climb stairs and ramps; can occasionally balance, stoop, kneel, crouch, or crawl; cannot tolerate unprotected heights; can occasionally operate a motor vehicle, and can frequently tolerate moving mechanical parts, humidity/wetness, extreme heat or cold, vibrations, and loud noise. (Exhibit 13F)

14

Case 6:14-cv-03512-NKL   Document 14   Filed 07/10/15   Page 14 of 17

[Tr. 673-74, emphasis added.] The ALJ addressed the testimony of the expert consultant, Dr. Goldstein, who opined that Andreatta had the ability to "occasionally…crawl, grip/handle, reach and use [her] fingers." [Doc. 675.] The ALJ noted that on a questionnaire related to her application, Andreatta indicated she could do laundry, do dishes, cook, make beds, vacuum, take out the trash, garden, and rake leaves. [Tr. 675, citing Exhibit 4E.] The ALJ also noted Andreatta's testimony that "typing and writing cause pain and swelling in her hands and wrist[,]" and later concluded that he did not find her allegations of totally disabling, medically determinable impairments credible. [Doc. 675-76.]

Thus, in determining the RFC, the ALJ considered and accounted for Andreatta's carpal tunnel syndrome, right shoulder problem, and neuropathy, and any credible, medically determinable effects the impairments had on her ability to reach, handle, finger, or feel. The ALJ accounted for them by limiting her to light work, and adding the limitations of lifting and carrying up to 10 pounds frequently and 20 pounds occasionally, crawling occasionally, and avoiding vibration. The assessment of the RFC was based upon all relevant, credible evidence, including medical evidence, 20 C.F.R. § 404.1545(a), and *Stormo*, 377 F.3d at 807, and is based on substantial evidence, *Dykes*, 223 F.3d at 867.

But, Andreatta argues, the record shows more limitation on her abilities to reach and manipulate than the ALJ accounted for, citing "examination findings by Andreatta's treating primary care physician and other treating specialists indicat[ing] problems with decreased range of motion, weakness, tremors in the hands, and tenderness in the shoulders and extremities. (ex: Tr. at 211, 210, 220, 218, 222, 223, 293, 314-315, 331, 270, 428, 378." [Doc.11, p. 17.] Andreatta also argues that she "consistently report[ed] weakness and swelling of the hands, difficulty reaching overhead, and pain with range of motion. (ex: Tr. at 292, 293, 269, 425,

15

409)." [*Id.*] The cited portions of the record do not demonstrate that the RFC is not based on substantial evidence. Many of her citations are to Dr. Robinson's records, which do reflect Andreatta's subjective complaints, but also that Dr. Robinson provided conservative treatment such as medications. Impairments that can be controlled by medications or other conservative treatment "cannot be considered disabling," *Brown v. Astrue*, 611 F.3d 941, 955 (8th Cir. 2010), and do not need to be included in the RFC, *Stout v. Shalala,* 988 F.2d 853, 855 (8th Cir. 1993). Furthermore, nowhere do those records indicate that any problems Andreatta claims to have had—whether with decreased range of motion, weakness, tremors in the hands, and tenderness in the shoulders and extremities—resulted in Dr. Robinson ordering or even identifying physical limitations on her activities necessitated by such symptoms.[2] A lack of significant functional restrictions imposed by treatment providers is inconsistent with allegations of disabling limitations. *Hensley v. Barnhart,* 352 F.3d 353, 357 (8th Cir. 2003).

Nor do the other records Andreatta cites support her argument. Rather, consistent with the RFC determination, they reflecting successful carpal tunnel release performed in 2008 by Dr. Kubik; the diagnosis of right shoulder joint spurring, which was successfully treated with arthroscopic surgery in January 2009; and Dr. Zhai's opinion that Andreatta's tremor was caused by use of an inhaler. None of those records reflect limitations imposed on Andreatta with respect to reaching, handling, fingering, or feeling. Furthermore, the remaining records Andreatta cites are related to flare-ups treated by injections in August 2010, i.e., after the period at issue and do not reflect limitations existing prior the expiration of the period at issue. *See Moore v. Astrue,*

---

[2] The lack of support in Dr. Robinson's records was sufficient reason for this Court, in its Order concerning Andreatta's appeal of the original ALJ decision, to hold that "substantial evidence existed for the ALJ's conclusion that Dr. Zeimet's opinion was supported by better or more thorough evidence than Dr. Robinson's opinion." [Tr. 906.]

16

572 F.3d 520, 522 (8th Cir. 2009) (claimant must show she was disabled prior to expiration of the period at issue).

If the ALJ failed to give more detail in the decision than he could have, such a deficiency does not require reversal. Reversal is necessary only if the failure prejudices the claimant. *Samons v. Astrue,* 497 F.3d 813, 821-22 (8th Cir. 2007) (citations omitted). An arguable deficiency in opinion writing technique is not grounds for reversal when that deficiency had no bearing on the outcome. *Robinson v. Sullivan,* 956 F.2d 836, 841 (8th Cir. 1992). The ALJ's analysis here provides "an adequate basis for meaningful judicial review" and is supported by substantial evidence. *See Cichocki v. Astrue*, 729 F.3d 172, 177 (2nd Cir. 2013) (holding that the ALJ's failure to explicitly engage in a function-by-function, RFC analysis does not require remand where the "ALJ's analysis . . . affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence such that additional analysis would be unnecessary or superfluous").

Accordingly, the RFC determination will not be disturbed.

### III. Conclusion

The Commissioner's decision is affirmed.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated:  July 10 , 2015
Jefferson City, Missouri